Portia L. Rauer, ISB #7233
Chynna K. Castoro, ISB #10610
POWERS FARLEY, PC
702 West Idaho Street, Suite 700
Boise, ID 83702
Telephone: (208) 577-5100
E-mail:  contact@powersfarley.com
         plr@powersfarley.com
         ckc@powersfarley.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIANNA COLO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NS SUPPORT, LLC, an Idaho limited liability company, d/b/a NEUROSCIENCE ASSOCIATES,<br><br>Defendant. | Case No. 1:20-CV-00437-REP<br><br>**DEFENDANT NS SUPPORT, LLC'S MEMORANDUM IN SUPPORT MOTION FOR SUMMARY JUDGMENT** |

COMES NOW Defendant NS Support, LLC, by and through its counsel of record, Powers Farley, PC, pursuant to Rule 56 of the Federal Rules of Civil Procedure and submits this Memorandum in Support of its Motion for Summary Judgment as follows:

### I.     INTRODUCTION

Plaintiff Brianna Colo alleges that NS Support discriminated, harassed, and retaliated against her based on sex, race, and national origin as prohibited by Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act.

Summary judgment is appropriate in this case because Ms. Colo fails to plead sufficient facts to support any of the legal theories she has asserted and instead bases her entire complaint on conclusory statements. Colo alleges that, while employed with NS Support, one of the physicians, Dr. Montalbano, made inappropriate comments, yet she provides minimal detail as to what those comments were, she fails to state when they were made, she fails to state to whom they were made, or whether they were so severe or pervasive to alter the conditions of her employment and create an abusive work environment. Ms. Colo also fails to allege any facts to support a finding that these alleged comments and conduct were subjectively and objectively offensive to create a hostile work environment or that she engaged in a protected activity to support her claim for retaliation, having never made a formal or informal complaint to any NS Support supervisor.

Thus, for the reasons detailed below, NS Support respectfully requests that the Court dismiss the Second Amended Complaint with prejudice because there are no genuine issues of material fact as to Ms. Colo's claim for discrimination and/or harassment.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to District of Idaho Local Civil Rule 7.1, NS Support has filed separately with the Court a Statement of Undisputed Material Facts with citations to the record, which is, by this reference, fully incorporated herein.

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a)). "One of the principal purposes of the summary judgment 'is to isolate and dispose of factually unsupported claims. . . .'" *Peregrine Falcon LLC, Tr. of Peregrine Falcon Leasing Tr. v. Piaggio Am., Inc.*, 446 F. Supp. 3d 654, 661 (D. Idaho 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Id*. To carry this burden, "the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case." *Id.* (internal citations omitted). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Id.* "The non-moving party must go beyond the pleadings and show 'by [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file' that a genuine dispute of material fact exists.'" *Id.* at 661–62 (quoting *Celotex*, 477 U.S. at 324).

## IV.   ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the grounds of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Idaho Human Rights Act "prohibits employers from discriminating against or discharging employees based on race, color, religion, sex, or national origin." *Mendez v. University Health Servs. Boise State Univ.*, 409 P.3d 817, 822 (Idaho 2018) (citing I.C. § 67-5909).[1]

### A.   COLO HAS FAILED TO STATE A CLAIM FOR HARASSMENT BASED ON RACE, NATIONAL ORIGIN, OR SEX.

To establish a hostile work environment claim,[2] the plaintiff must show "(1) that [s]he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). "Simply causing an employee offense based on an isolated comment

---

[1] "Claims under the [Idaho Human Rights] Act are evaluated under the 'quantum of proof and standards promulgated in discrimination cases arising under Title VII.'" *Allred Home Depot USA, Inc.*, No. 1:17-cv-00483-BLW, 2019 WL 2745731, at *11 (D. Idaho June 28, 2019) (quoting *Bowles v. Keating*, 606 P.2d 458 (Idaho 1979)).

[2] "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (internal citations omitted).

is not sufficient to create actionable harassment under Title VII." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

A plaintiff must establish that the conduct at issue was "both <u>objectively and subjectively</u> offensive: [s]he must show that a reasonable person would find the work environment to be 'hostile or abusive,' and that <u>[s]he in fact did perceive it to be so</u>." *Dawson v. Entek Intern.*, 630 F.3d 928, 938 (9th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)) (emphasis added). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). The factors to be considered when evaluating the objective hostility of a work environment include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest*, 360 F.3d at 1113 (internal citations omitted).

Properly applied, these standards will "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher*, 524 U.S. at 788. "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (internal citation omitted); *see also Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (per curiam) ("[I]solated incidents of sexual horseplay alleged by Candelore took place over a period of years and were not so egregious as to render Candelore's work environment 'hostile.'"); *Faragher*, 524 U.S. at 787 n.1 (explaining that incidents of environmental sexual harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.").

1. **Ms. Colo fails to state a claim for a hostile work environment based on sexual harassment**.

Ms. Colo alleges she was sexually harassed by Dr. Montalbano when he made "frequent sexual comments to Colo and to other female employees in the presence of Colo." Ms. Colo alleges the comments made specifically to her consist of the following: "nice ass"; "why are you getting so skinny, you look better with more meat on your bones"; "will you be my surrogate"; "turn around like a model and let me see"; and "why don't you wear that dress more often." Comments made to other employees include "did you get new pants? They look good on you"; "your ass looks good in those jeans"; and "if you were unconscious, I would have no problem molesting you." Ms. Colo also alleges that Dr. Montalbano sexually harassed her when he massaged her shoulders and back without her consent, walked around the office with a hotdog between his thighs, took a picture of another physician off of the wall and drew a penis next to the mouth, and told a previous office manager not to hire any more fat and ugly employees. For the reasons addressed below, Ms. Colo's claim for sexual harassment fails as a matter of law.

First, Ms. Colo provides no detail regarding these alleged comments, such as when they were made, where they were made, and who was present when they were made. *See Carter v. Atrium Hosp.*, 997 F.3d 803, 812 (8th Cir. 2021) (finding that the district court did not err in granting summary judgment because the employee "provide[d] few details about when, where, or in what context the incidents occurred, and he offer[ed] no description of how the misconduct impacted his subjective experience in the workplace."); *Helm v. Kansas*, 656 F.3d 1277, 1290 (10th Cir. 2011) ("Helm provided absolutely no details about Judge Stewart's conduct, nor does the record suggest that Helm even mentioned sexual harassment.").

Ms. Colo makes unsupported accusations that Dr. Montalbano sexually harassed her and other female employees during the ten years she worked at NS Support. But, importantly, she provides no dates, no names, and refers to no documentary evidence to support her accusations.

Ms. Colo's allegations are conclusory; it is her word and nothing else. Ms. Colo's claims do not meet the necessary requirement of adequate detail and suggest nothing more than a disgruntled employee extracting revenge on her employer. Like the court in *Carter v. Atrium Hosp.*, summary judgment is appropriate due to the lack of necessary detail to support Ms. Colo's claims.

Second, Ms. Colo has failed to establish that a reasonable person would consider the NS Support workplace to be so objectively offensive as to alter the conditions of their employment. As noted above, conduct that is "merely offensive" and "not severe or pervasive enough to create an objectively hostile or abusive work environment [meaning] an environment that a reasonable person would find hostile or abusive [ ] is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Relevant considerations for assessing a hostile work environment claim include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Blackwell v. City of Bridgeport*, 238 F. Supp. 3d 296, 307 (D. Conn. 2017) (quoting *Harris*, 510 U.S. at 23).

In *McGinest*, the Ninth Circuit Court of Appeals held that the employee's described incidents were sufficiently objectively offensive to survive summary judgment wherein the employee "was forced to work in dangerous situations and barraged with insults and abuse by, among others, [his] Supervisor []." 360 F.3d at 1113–14. "Over a two-year period, [the employee] was prevented from collecting overtime pay that he worked"; he "was subjected to extreme racial insults, as well as more subtle taunts, by supervisors and coworkers"; "[r]acist graffiti such as 'nigger' and 'white is right' regularly appeared in the bathroom and on equipment, and on one occasion a management-level employee called McGinest 'stupid nigger' to his face." *Id.* at 1115. The court held that "McGinest's ability to perform his job was directly affected by the refusal of his coworkers to work under his direction on occasion." *Id.* at 1114–15. Specifically, he

was involved in a serious accident and because of his race, his employer was unwilling to ensure that his vehicle received necessary maintenance; he was forced to work in dangerous situations; he was barraged with insults and abuse; and he was prevented from collecting overtime pay. *Id.* at 1114.

Unlike in *McGinest*, an objectively reasonable person would not find the alleged offhand comments to Ms. Colo and her coworkers to be so offensive so as to create a hostile work environment. In fact, Ms. Colo alleges she dealt with Dr. Montalbano's sexual harassment for ten years yet fails to assert even a single negative action that was taken against her. Dr. Montalbano's alleged comments and conduct, even if taken as true, do not amount to anything more than a mere offensive utterance.

Third, Ms. Colo's own conduct during her tenure at NS Support contradicts any possible argument that she subjectively viewed her work environment as hostile. The Equal Employment Opportunity Commission's policy guidance on sexual harassment provides:

> [C]ourts and the Commission have considered whether the complainant welcomed the sexual conduct by acting in a sexually aggressive manner, using sexually-oriented language, or soliciting the sexual conduct. Thus, in *Gan v. Kepro Circuit Systems*, 27 EPD ¶ 32,379 (E.D. Mo. 1982), the plaintiff regularly used vulgar language, initiated sexually-oriented conversations with her co-workers, asked male employees about their marital sex lives and whether they engaged in extramarital affairs, and discussed her own sexual encounters. In rejecting the plaintiff's claim of "hostile environment" harassment, the court found that any propositions or sexual remarks by co-workers were "prompted by her own sexual aggressiveness and her own sexually-explicit conversations" *Id.* at 23,648. . . .

Policy Guidance on Current Issues of Sexual Harassment, 1990 WL 1104701.

Here, Ms. Colo was notorious for engaging in inappropriate sexual conduct at NS Support, corroborated by several employees. Ms. Colo's co-workers have explained that Ms. Colo would participate in the office banter, give her co-workers massages, and wear inappropriate clothing to work in violation of office policy.

Ms. Colo's email communications with her co-workers similarly support a finding that Ms. Colo was not offended by the conduct she alleges was inappropriate. For example, in the years leading up to her termination, Ms. Colo made the following statements to her co-workers, referring to co-workers, supervisors, and patients: "listen here you little "B" Word"; "freaking twat waffle"; "bitch"; "shut up hoe"; "retard"; "fuck face"; "fuck him" "she's so fucking stupid"; "fucking idiot"; "fucking dick"; "Manning is being a fucking dick"; "dumb ass"; and "this bitch is annoying." Thus, it is disingenuous for Ms. Colo to argue that she took offense to the statements and conduct she alleges occurred, when it was Ms. Colo's routine to do the same.

Moreover, Ms. Colo never reported a single incident in the ten years she was employed with NS Support, which also supports a finding that she was not subjectively offended by Dr. Montalbano's alleged conduct and comments. In *Hockman v. Westward Comm., LLC*, 407 F.3d 317, 321–23 (5th Cir. 2004), a former newspaper editor brought a cause of action against her former employer to recover on hostile-work-environment, retaliation, and constructive discharge theories. The court affirmed the district court's grant of summary judgment in favor of the employer, holding that the former employee could not show that her employer had failed to take prompt remedial action to prevent sexual harassment by a coworker and, therefore, could not prevail on her hostile-work-environment claim. *Id.* at 329. The court explained that

> (1) Hockman received the Westward employee handbook containing the company's antiharrassment policy; (2) the policy provides that if the employee does not feel that her allegation is being handled satisfactorily by his or her supervisor, then she should report the incident directly to the Director of Human Resources; (3) she acknowledged her receipt of the handbook and understanding of its provisions with her signature; and (4) despite her awareness, there is no evidence that Hockman availed herself of any of the company's provisions after speaking to French.

*Id.*

The court affirmed summary judgment, holding that the employee "unreasonably failed to take advantage of corrective opportunities provided to her," despite "having been provided with

copy of employee handbook that directed her, if unhappy with her immediate supervisor's handling of problem, to take matter to the company's director of human resources." *Id.* at 330; *see also Wood v. Delta Beverage Group, Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) ("A reasonable woman would have felt compelled to report Eddy's alleged post-July 7 harassment to her supervisors. Therefore, [summary judgment was appropriate.]"); *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1178 (9th Cir. 2003) (finding former employee's complete failure to use available and adequate procedures to be unreasonable, noting that the plaintiff waited two years from the first sexual incident before reporting the behavior); *Montero v. AGCO Corp.*, 192 F.3d 856, 863 (9th Cir. 1999) (finding a two-year delay in reporting the conduct to be unreasonable); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1180–82 (9th Cir. 2001) (holding that failure to report the behavior to the company was unreasonable).

Here, NS Support had an anti-harassment and anti-violence policy in place during Ms. Colo's employment, contained in its employee handbook, which Ms. Colo was required to read and sign every year. The handbook clearly identifies avenues for Ms. Colo to report any harassment, discrimination, or violence. The handbook states that "[t]he Clinic prohibits sexual harassment of its employees by other employees or outside parties. Sexual harassment negatively affects morale, motivation and job performance it is inappropriate, offensive and illegal and will not be tolerated." The handbook also explains that it prohibits workplace harassment and discrimination.

> If an employee believes that they have been subjected to sexual harassment, they are to promptly report such incident(s) to your immediate supervisor, the Chief Operating Officer or The Physician Group Leader. If your complaint or concern relates to one of the above, you may report your concern to any other physician member of the Clinic. If your complaint or concern cannot be resolved informally, it will be investigated and any necessary corrective measures will be undertaken. In all cases, any employee found to be in violation of this policy shall have the appropriate disciplinary action taken against him or her, which may include immediate termination.

Importantly, the handbook explains that if an employee has experienced conduct that they believe is contrary to this policy, they "have an obligation to take advantage of this complaint procedure. An employee's failure to fulfill this obligation could affect his or her rights in pursuing legal action."

Ms. Colo testified that she knew NS Support had a policy against sexual harassment. She agreed that it was her understanding that if she believed she had been subjected to sexual harassment she was to promptly report it. She knew she could report to human resources, Dr. Hajjar as the physician group leader, or Dr. Manning as her immediate supervisor whom she was close with. In fact, in the past, Ms. Colo made several written complaints to human resources relating to NS Support policies. On August 29, 2018, Ms. Colo sent correspondence "[t]o the Department of Human Resources," explaining that she was writing "to file a formal complaint against Neuroscience Associates" for clocking her out during a team building bowling party. On October 5, 2018, Ms. Colo filed another "formal complaint against Neuroscience Associates" with "the Department of Human Resources," complaining of unfair treatment relating to work hours and PTO.

Accordingly, Ms. Colo was very familiar with the process for filing written complaints yet took no action to report the alleged offensive conduct, despite her allegations that she was subjected to harassment "[d]uring the entire [ten year] course of her employment." The facts in this case are similar to the facts in *Hockman* where the court granted summary judgment to the defendant due to the plaintiff's failure to avail herself of the company's provisions set forth in the employee handbook. The same result should be reached in this case and Ms. Colo's claims dismissed.

Finally, Ms. Colo's claim for sexual harassment is weakened by the fact that a majority of the comments alleged in her Second Amended Complaint were not directed at her, but third parties.

Several courts have held that comments directed at people other than the plaintiff are less severe and generally do not amount to harassment. *See, e.g., Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1020 (9th Cir. 2018) ("Certainly, these alleged remarks are gender-specific and potentially offensive. But, once again, such passing comments cannot support Campbell's claim for a hostile work environment, especially as they were not directed at Campbell . . . ."); *Jennings v. Univ. of N. Carolina, at Chapel Hill*, 444 F.3d 255, 272–73 (4th Cir. 2006), *as amended on reh'g* (June 8, 2006), *on reh'g en banc sub nom. Jennings v. Univ. of N. Carolina*, 482 F.3d 686 (4th Cir. 2007) (explaining that district court's grant of summary judgment was warranted based on the fact that the sexual banter occurred in a group setting of some 26 women and the comments were not directed at the plaintiff).

Further, at least one inappropriate comment Ms. Colo alleges Dr. Montalbano made to an employee that Ms. Colo allegedly took offense to, is blatantly false. Ms. Colo alleges that Dr. Montalbano told another NS Support employee that "if [she] were unconscious, I would have no problem molesting you" and "your ass looks good in those jeans." Ms. Colo alleged in her complaint filed with the IHRC that this comment was directed to Debbie Svangstu. Ms. Svangstu states in her declaration that she does not recall Dr. Montalbano ever telling her if she were unconscious, he would molest me or that her ass looks good.

Accordingly, based on the foregoing, NS Support contends that Ms. Colo has failed to state a claim for relief under Title VII for hostile work environment based on sexual harassment and therefore requests that the Court dismiss her claim with prejudice.

    **2.**    **Ms. Colo fails to state a claim for hostile work environment based on race and national origin**.

Ms. Colo alleges that she was harassed by Dr. Montalbano based on her race/national origin when he made comments in her presence and in other's such as, "fucking Mexicans," "rice pickers are supposed to work harder," and "is that fucking jew working in surgery." She also alleges that

Dr. Montalbano asked his children whether they wanted to see "illegal aliens for Halloween." For the reasons addressed below, Ms. Colo's claim for racial/national origin discrimination fails as a matter of law.

To prevail on a claim of hostile work environment and harassment based on national origin/race, a plaintiff must prove:

> (1) he was a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his national origin; (4) the harassment had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile or offensive work environment and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior.

*Simoudis v. Ford Motor Co.*, 29 F. App'x 314, 317 (6th Cir. 2002).

First, similar to the allegations addressed above, Ms. Colo provides <u>no</u> detail regarding these alleged racial comments, such as when they occurred, where they occurred, or who was present when they were made, thereby leaving NS Support and the Court without a way to corroborate Ms. Colo's allegations. And at least one employee whom Ms. Colo references in her deposition as having heard Dr. Montalbano make these statements, Debbie Svansgtu, states that she "do[es] not recall Dr. Montalbano ever telling me . . . that rice pickers are supposed to work harder."

Second, aside from two comments, every comment Dr. Montalbano allegedly made in Ms. Colo's presence was directed to a protected class that Ms. Colo is not a member of. Ms. Colo has made no claim that she is Jewish or Asian. As district judge William Schubb explained, "[i]n the context of Title VII cases, the Ninth Circuit and other circuit courts of appeals have repudiated bystanders' claims for hostile work environment on the basis of standing where the bystander was not a member of the protected class that was the target of the hostile conduct." *Gaub v. Prof. Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1133 (D. Idaho 2012) (internal citations omitted).

Should a bystander want to pursue a claim of hostile work environment, they need to prove that the conduct was so offensive to them as a bystander that it created a hostile workplace not only for them, but any reasonable person. *See Walker v. Mueller Industries, Inc.*, 408 F.3d 328, 331 (7th Cir. 2005) (explaining that the plaintiff, who was white, "made no attempt to establish that the conduct was so offensive to him as a third party as to render the workplace hostile not only for him but for any reasonable employee who likewise was a bystander, rather than a target of the harassment.").

Here, in her Second Amended Complaint [Dkt. 18], Ms. Colo alleges that Dr. Montalbano's comments referring to protected classes other than hers were "inappropriate" and nothing more. She makes no attempt to establish that the comments and conduct were so offensive to her as a third party as to render the workplace hostile not only for her but any other reasonable employee, thereby failing to establish a claim.

Third, Ms. Colo cannot establish that a reasonable person would consider the NS Support workplace to be so objectively offensive as to alter the conditions of their employment based on Dr. Montalbano's alleged racial comments. *See, e.g., Faragher*, 524 U.S. at 787 ("[M]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not sufficiently alter terms and conditions of employment to violate Title VII); 1 B. Lindemann & P. Grossman, Employment Discrimination Law 349, and nn. 36–37 (3d ed. 1996) (citing cases instructing that "[d]iscourtesy or rudeness should not be confused with racial harassment" and that "a lack of racial sensitivity does not, alone, amount to actionable harassment").

Here, a reasonable person would not find the offhand comments, "illegal aliens" and "rice pickers," though inappropriate, to be so severe or pervasive so as to alter the conditions of their employment and create an abusive work environment.

Moreover, Ms. Colo cannot establish that she personally considered her workplace to be offensive as a result of Dr. Montalbano's alleged racial comments. Ms. Colo's conduct towards others is at least equally offensive and warranted her termination. In *Gibson v. Concrete Equip. Co., Inc.*, the court held that the district court did not err in granting summary judgment to Con-E-Co, determining that there was evidence that Gibson "engaged in behavior similar to that which she claimed was unwelcome or offensive," on multiple occasions, which "demonstrates that the behavior of the accused employees was not unwelcome." 960 F.3d 1057, 1064 (8th Cir. 2020).

Ms. Colo repeatedly engaged in racist and discriminatory behavior during her employment with NS Support. For example, on October 23, 2015, Ms. Colo sent a co-worker the following racist meme:



On April 25, 2016, Ms. Colo sent the same co-worker another racist meme:



DEFENDANT NS SUPPORT, LLC'S MEMORANDUM IN SUPPORT MOTION FOR SUMMARY JUDGMENT - 14

Ms. Colo would also joke about Mexican and Jewish individuals and use racial slurs daily, thereby diminishing any argument by Ms. Colo that she personally considered her workplace to be offensive as a result of Dr. Montalbano's alleged racial comments.

Finally, Ms. Colo's claim for racial/national origin harassment fails as a matter of law because she cannot show that NS Support failed to take prompt remedial action to prevent and correct any racial discrimination by Dr. Montalbano. Despite alleging that Dr. Montalbano's comments continued for years, she never reported a single incident to human resources, her supervisors, or any co-workers. It was therefore impossible for NS Support to take remedial action to prevent and correct the alleged racial discrimination, especially since no other employees experienced the same conduct Ms. Colo allegedly experienced.

Therefore, based on the foregoing, NS Support requests that the Court dismiss Ms. Colo's claim for racial discrimination because she cannot establish a prima facie case of racial discrimination in violation of Title VII or the Idaho Human Rights Act.

**B.    COLO FAILS TO STATE A CLAIM FOR RETALIATION.**

Title VII also prohibits retaliation, making it unlawful "for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title] . . . ." 42 U.S.C. § 2000e-3(a).

To make out a prima facie case of retaliation in violation of Title VII, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Gaub*, 845 F. Supp. 2d at 1134.

"[A]n employee's formal or informal complaint regarding unlawful employment practices is a 'protected activity,' and a plaintiff need only show that her belief that an unlawful employment

practice occurred was 'reasonable.'" *Id.* "[F]iling a complaint with the EEOC is a protected activity," *see* 42 U.S.C. § 2000e-3(a), as is "[m]aking an informal complaint to a supervisor," *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (quoting *Equal Employ. Opp. Comm'n v. Hacienda Hotel*, 881 F.2d 1504, 1514 (9th Cir. 1989)); *see also Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) ("[W]hen an employee protests the actions of a supervisor such opposition is a 'protected activity.'").

"[A] plaintiff may establish a causal link between the protected activity and the adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and a proximity in time between the protected action and the adverse employment act." *Id.*; *see also Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred."); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.").

However, temporal proximity alone is insufficient to establish causation. *See Dilettoso v. Potter*, Nos. 04-17285, 06-15328, 2007 WL 2051415, at *2 (9th Cir. July 17, 2007) ("[T]he temporal proximity of adverse employment actions, taken alone, is insufficient to establish causality."); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (explaining that temporal proximity does not establish causation, but is simply evidence upon which an inference of a causal link may be based); *see also Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (explaining that summary judgment may be appropriate if the totality of the facts fail to establish the necessary causal connection).

Once the plaintiff proves all three elements, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). The burden then shifts back to the plaintiff to "demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

Here, Ms. Colo has failed to establish that (1) she engaged in a protected activity and (2) a causal link between the protected activity and the adverse action, *i.e.*, her termination. Ms. Colo makes no allegations in her Second Amended Complaint [Dkt. 18] relating to her claim for retaliation; she merely alleges that she was retaliated against. The only time Ms. Colo complained of harassment and discrimination was when she filed her complaint with the IHRC and EEOC, which was after her termination. Ms. Colo alleges that she "spoke with other employees of NS Support and spoke of her intent to report the misconduct of Montalbano to human resources of NS Support, specifically related to his harassing and racists behavior towards her and other employees of NS Support," but she provides no detail.

Ms. Colo asserts in her Second Amended Complaint [Dkt. 18] as well as during her deposition that she reported her intentions to Kelly Roberts, a former co-worker at NS Support, but Ms. Roberts does not corroborate this. Ms. Roberts states in her declaration that Ms. Colo told her she was gathering "stuff" on Dr. Montalbano, but when she asked for detail, Ms. Colo would not elaborate. Ms. Colo did not tell Ms. Roberts what information she had or what she was going to do with that information. Ms. Roberts was upset by Ms. Colo's allegations, so she advised Ms. Jolliff of what Ms. Colo had told her. Ms. Jolliff confirms that she did not know what information Ms. Colo was allegedly gathering: "I asked Ms. Roberts what information Ms. Colo had, and Ms. Roberts said she did not know." Ms. Jolliff reported what she heard to Dr. Hajjar, who similarly did not know what information Ms. Colo was gathering.

Ms. Roberts was Ms. Colo's friend and co-worker; she was not the Chief Operating Officer of NS Support, she was not the physician group leader, and she was not Ms. Colo's supervisor, which are the people identified in the employee handbook as individuals to whom Ms. Colo was required to report her claims of misconduct. It is not enough for Ms. Colo to argue that she told Ms. Roberts.

Ms. Colo's claim of retaliation fails since no one knew what alleged information she was gathering because she did not make a report to anyone. Ms. Colo cannot claim her information gathering was a "protected activity" when she did not report what information she was gathering. While Ms. Colo's termination occurred soon after it was learned that she was gathering information, that alone does not prove her termination was in retaliation when considering the totality of the circumstances. NS Support believed it had given Ms. Colo a fresh start after the November 28, 2018, meeting, with everyone starting anew with a clean slate, only to learn later that Ms. Colo was supposedly gathering some kind of undisclosed information about one of its physicians. Given Ms. Colo's long history of insubordination, her latest action, in the face of the fresh start they had given her, was the final straw. Considering the totality of the circumstances, the temporal proximity of her termination is not sufficient proof of retaliatory conduct.

Accordingly, Ms. Colo cannot prove that she engaged in protected activity and cannot prove a causal link between the alleged protected activity and the adverse action, *i.e.*, her termination.

Because Ms. Colo has failed to prove all three elements of her retaliation claim, the analysis ends there, and the burden of production does not shift to NS Support to present legitimate reasons for the adverse employment action. That said, NS Support contends that it had sufficient, unrelated reasons to terminate Ms. Colo.

Ms. Colo was anything but a model employee. She had been given several chances to correct her behavior or be terminated. Several employees at NS Support have confirmed that Ms. Colo repeatedly violated the dress code; she would work less than her required number of full-time hours per week; she would persistently fail to clock in and out. Just from July 14, 2017, to December 5, 2018, Ms. Colo had emailed Jeri Ferrill, Accountant/Human Resources Specialist for NS Support, 99 times, explaining that she had forgotten to clock in/out and requesting that Ms. Ferrill record her clock-ins/outs. Ms. Colo made disparaging posts on Facebook about NS Support and her supervisors, stating that she hated her COO, Ms. Jolliff. Ms. Colo had negative PTO balances for the majority of her tenure with NS Support and was persistently asked to fix it, which she failed to do. On March 26, 2009, Ms. Colo had her third counseling session on the issue of tardiness, therefore being placed on probation for three months.

Ms. Colo routinely disregarded the terms of the employee handbook from the beginning to the end of her employment on December 6, 2018. She disregarded the rules, was insubordinate, and believed she could do as she pleased. She was a repeat offender of the PTO policy, dress code policy, and time clock policy.

In the end, Ms. Colo's claims of harassment, discrimination, and retaliation have no basis in fact, lack detail and substance, and cannot be corroborated. Even if Ms. Colo's allegations are considered truthful, they amount to nothing more than isolated incidents of inappropriate remarks for which she had a responsibility to report to management if she found them to be offensive. If the alleged events occurred and if she was offended by them, she had a responsibility to report them to management and work through the internal grievance policy and she chose not to do so. Ms. Colo's claims are a self-serving attempt to exact revenge against NS Support for its decision to terminate a difficult at-will employee, not retaliation.

## V. CONCLUSION

Based on the foregoing, NS Support respectfully requests that the Court grant its Motion for Summary Judgment, thereby dismissing Ms. Colo's Second Amended Complaint in its entirety.

DATED this 18th day of February, 2022.

POWERS FARLEY, PC

By _____
Portia L. Rauer - Of the Firm
Chynna K. Castoro – Of the Firm
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of February, 2022, I caused to be served a true copy of the foregoing DEFENDANT NS SUPPORT, LLC'S MEMORANDUM IN SUPPORT MOTION FOR SUMMARY JUDGMENT, electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kimberly L. Williams, klwilliams@wmlattys.com
*Attorneys for Plaintiff*

 /s/ Portia L. Rauer
Portia L. Rauer
Chynna K. Castoro