UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIANNA COLO,<br><br>                 Plaintiff,<br><br>  v.<br><br>NS SUPPORT, LLC, an Idaho limited liability company d/b/a Neuroscience Associates,<br><br>              Defendant. | Case No. 1:20-CV-00437-DKG<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. 30)** |

**INTRODUCTION**

Pending before the Court is Defendant's Motion for Summary Judgment ("Motion"). (Dkt. 30). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 12). After the Motion was fully briefed, (Dkts. 30, 31, 35), the Court conducted a hearing on May 25, 2022,[1] and took the Motion under advisement. (Dkt. 39). For the reasons set forth below, the Court will grant in part and deny in part the Motion.

---

[1] Citations to the audio recording from the hearing will be identified as "Oral Argument."

**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Plaintiff Brianna Colo's ("Colo") claim of discrimination, harassment, and retaliation based on sex and national origin against her former employer Defendant NS Support, LLC, a/k/a NeuroScience Associates, ("NS Support"), in violation of Title VII of the Civil Rights Act of 1964, and the Idaho Human Rights Act.[2] (Dkt. 18).

NS Support is a neurosurgical clinic with offices in Boise and Meridian, Idaho. The clinic provides clinical care to the patients of Drs. Michael Hajjar, Timothy Johans, Richard Lochhead, Thomas Manning, Paul Montalbano, and Kelly Bridges. (Dkt. 30-2 ¶ 1).

NS Support hired Colo in 2008 as a part-time receptionist; she later became a full-time surgery scheduler for Manning and worked in that position until her employment was terminated on December 6, 2018. (*Id.* ¶ 2). Colo claims she was subject to a hostile

---

[2] The Second Amended Complaint states a single claim for relief broadly entitled "Race Discrimination, Sexual Harassment, and Retaliation in Violation of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act." (Dkt 18 at 4). Plaintiff's pleading and briefing are somewhat imprecise in their use of the terms "race" and "national origin." Having carefully reviewed all the materials in the record, the Court finds that Plaintiff's claim concerns allegations of discrimination based on national origin, not race. *See* (Dkt. 18 ¶ 20) (describing Colo's Charge of Discrimination filed with the Idaho Human Rights Commission alleging sexual harassment, national origin discrimination and retaliation); (Dkt. 18 at ¶ 23) ("The actions of NS Support adversely affected Colo's employment because of sex, national origin, and retaliation in violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*., and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq*."); (Dkt. 31 at 1-2) ("Defendant violated Title VII…and the [IHRA], based upon Plaintiff's allegations of sexual harassment, national origin discrimination and retaliation."). Accordingly, the Court will address Colo's claim as discrimination based on national origin.

work environment and wrongfully terminated from her employment in retaliation for making preparations to report alleged workplace harassment and discrimination in violation of Title VII and the Idaho Human Rights Act. (Dkt. 18 ¶ 23). Colo alleges during the entire course of her employment, but in increasing frequency during the last several months of her employment, Montalbano made inappropriate comments regarding her national Mexican origin and the national origin of Colo's supervising physician, made frequent sexual comments to her and other female employees as well as other disparaging statements about females, and engaged in conduct of a sexual nature. (Dkt. 18 ¶¶ 10-13).

The events leading up to Colo's termination from employment began on October 5, 2018, when Hajjar became aware of a social media post Colo made about NS Support and Lisa Jolliff, the Chief Operating Officer at NS Support. (Dkt. 30-15); (Dkt. 30-23 ¶ 6). The NS Support physician leadership team met on October 18, 2018, to discuss the post. The consensus among the physicians was that the social media post was a fireable offense and Colo's actions were overtly toxic, (Dkt. 30-23 ¶ 7), but Hajjar stated he did not want to terminate Colo's employment at that time, (Dkt. 30-23 ¶ 8). Instead, Hajjar wanted to have a "serious discussion" with Colo about her behavior in an effort to rehabilitate her relationship with NS Support. (Dkt. 30-23 ¶ 8). To that end, a meeting between Hajjar, Manning, Jolliff, and Colo was scheduled for November 28, 2018.

The day before the scheduled meeting, on November 27, 2018, Colo spoke with her friend and co-worker, Kelly Roberts.[3] (Dkt. 32 ¶ 3). Colo contends she spoke to Roberts regarding her intent to report certain conduct by Montalbano to NS Support's human resources department. (Dkt. 32 ¶ 3); (Dkt. 33 ¶ 4). NS Support disputes this, asserting Colo told Roberts only that she was "gathering 'stuff'" on Montalbano but would not provide any details of what she was doing, and specifically denies that Colo indicated she was going to file a complaint about Montalbano with human resources. (Dkt. 30-21 ¶ 11). NS Support further contends that Colo never told Roberts "she was offended or uncomfortable with anything or anyone at NS Support." (Dkt. 30-21 ¶¶ 12-13).

On November 28, 2018, Colo met with Hajjar, Manning, and Jolliff.[4] The parties dispute what transpired during the meeting. Colo alleges the issue regarding the social media post was "resolved" and that "no other issues were raised or discussed." (Dkts. 32 ¶¶ 4-5; 33 ¶ 5). NS Support contends that Colo was specifically asked if she had any concerns about the workplace that she wanted to discuss or bring up, but Colo said there was nothing. (Dkt. 30-23 ¶ 10); (Dkt. 30-16 at 4). At the conclusion of the meeting, both parties represent that everyone agreed to move forward together with a "fresh start" and a "clean slate." (Dkt. 30-2 ¶ 28); (Dkt. 33 ¶ 5).

---

[3] Roberts is a medical assistant at NS Support working as a scheduler for Johans. (Dkt. 30-21 ¶ 3). Roberts was not Colo's supervisor during the events at issue here.

[4] Hajjar was the physician manager of NS Support during the time of Colo's employment at NS Support. (Dkt. 30-23 ¶ 3). Manning was Colo's direct supervisor, and Jolliff was Colo's administrative supervisor. (Dkt. 30-7 ¶ 5).

The amended complaint alleges Jolliff and Hajjar "became aware that Colo was preparing to make a report regarding Montalbano's conduct" on November 30, 2018, and on December 4, 2018. (Dkt. 18 ¶¶ 17-18). NS Support disputes this allegation, contending that on November 30, 2018, Roberts informed Jolliff that Colo was "gathering information" on Montalbano, but did not know what information Colo was gathering, and on December 4, 2018, Jolliff notified Hajjar of her conversation with Roberts. (Dkt. 30-7 ¶¶ 18-19).

It is undisputed that Colo never reported an incident of inappropriate conduct or behavior by Montalbano pursuant to the process set forth in NS Support's employee handbook during her employment. However, it is disputed whether Colo otherwise reported any harassment or discrimination to anyone at NS Support, including her direct supervisor, Manning. (Dkt. 30-2 ¶ 31). Colo testified that she complained to Manning about Montalbano's harassing behavior, specifically his comments about Mexicans and Jews, but cannot recall when that was. (Dkt. 30-4 at 7) (Tr. 130:20-23; 131:4-7; 132:3-6 (Colo Depo.)). NS Support maintains Colo never made any report of harassment or discrimination to anyone at NS Support, including Manning. (Dkt. 30-2 ¶ 31).

On December 6, 2018, Colo was terminated from her employment at NS Support. (Dkt. 18 ¶ 19). The parties dispute the basis for her termination. Colo contends she was terminated from her position in retaliation for preparing to report Montalbano's conduct to human resources. (*Id.* ¶¶ 16-19). NS Support maintains Colo was terminated based upon a history of behavioral problems and negative attitude, (Dkt. 30-2 ¶¶ 21, 32), her

insubordination to a supervisor, and pursuant to the bylaws in the employee handbook, (Dkt. 34-1, Ex. A at 7).

On December 24, 2018, Colo filed a charge of discrimination with the Idaho Human Rights Commission ("IHRC"), and concurrently with the United States Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment, national origin discrimination, and retaliation. (Dkt. 18 ¶ 20). Thereafter, the IHRC and EEOC issued notices of right to sue.

Colo initiated this action on September 14, 2020. (Dkt. 1). Thereafter, the Court granted NS Support's motion to dismiss for failure to state a claim, but afforded leave to file an amended complaint. (Dkt. 17). Colo timely filed an amended complaint on March 31, 2021. (Dkt. 18). NS Support filed the instant motion for summary judgment on February 18, 2022. (Dkt. 30).

## STANDARD OF LAW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to her case and upon which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

If the nonmoving party fails to make such a showing on any essential element of her case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party, and the Court must not make credibility findings. *See id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *See id.* at 256–57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*,

477 U.S. at 324. However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## DISCUSSION

Title VII prohibits employment discrimination because of a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation, making it unlawful "for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title] . . . ." 42 U.S.C. § 2000e-3(a). "This includes a prohibition against the creation of a hostile work environment." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 686 (9th Cir. 2017) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Woods v. Graphic Comm'ns*, 925 F.2d 1195, 1200 (9th Cir. 1991)).

Similarly, the Idaho Human Rights Act ("IHRA") "prohibits employers from discriminating against or discharging employees based on race, color, religion, sex, or national origin." *Mendez v. University Health Servs. Boise State Univ.*, 409 P.3d 817, 822

(Idaho 2018) (citing I.C. § 67-5909). Claims under the IHRA are analyzed under the same standards applicable to Title VII claims. *Kamdem-Ouaffo v. Idahoan Foods, LLC*, 243 F. Supp. 3d 1130, 1141 (D. Idaho 2017), *aff'd*, 789 F. App'x 75 (9th Cir. 2020). Accordingly, the Court will address Colo's claim collectively under both Title VII and the IHRA.

NS Support moves for summary judgment, arguing that Colo failed to establish the existence of a genuine dispute of material fact on her claim of (1) hostile workplace based on sex and national origin, and (2) retaliation. (Dkt. 30).

**1. Hostile Workplace Claim Premised on Sex and National Origin**

Colo claims she was subject to unlawful harassment in the workplace based on sex and national origin, which created a hostile work environment based on the comments and conduct of Montalbano. (Dkt. 18 ¶¶ 9, 23). "To prevail on a hostile workplace claim premised on either [national origin] or sex, a plaintiff must show that: (1) she was subjected to verbal or physical conduct [because of her national origin] or [of a] sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. County of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003); *see also Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 817 (9th Cir. 2002) (quoting *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998)) (national origin discrimination)). Further, the Ninth Circuit has held that "if … hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 9**

2005) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004)) (alteration in original).

A hostile work environment is one that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998). The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998) (noting that the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed"). Assuming that a reasonable person would find a workplace hostile, if the victim "does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21–22.

### a.  Harassment Based on Sex

NS Support argues that Colo has failed to establish each element of her claim for harassment based on sex. (Dkt. 30-1 at 5).

### i.  Verbal or Physical Conduct of a Sexual Nature

First, NS Support argues that Colo has failed to demonstrate that she was subject to conduct of a sexual nature because she provides little to no detail regarding Montalbano's alleged conduct, including the "when, where, or … what" of such conduct. (Dkt. 30-1 at 5-6); *see Carter v. Atrium Hosp.*, 997 F.3d 803, 812 (8th Cir. 2021)

(summary judgment was proper because the employee "provide[d] few details about when, where, or in what context the incidents occurred, and he offer[ed] no description of how the misconduct impacts his subjective experience in the workplace"). In response, Colo directs the Court to the Second Amended Complaint alleging Montalbano made frequent inappropriate comments and gestures to her that were of a sexual nature.[5] (Dkt. 31 at 3); Oral Argument at 2:38.

At the summary judgment stage, it is well settled that the non-moving party must go beyond the pleadings and show "by [her] affidavits, or by the depositions, answers to interrogatories, or admission on file" that a genuine issue of material fact exits. *Celotex*, 477 U.S. at 324. Here, the Court will "liberally construe" Colo's Second Amended Complaint to be verified[6] and will therefore consider it as an affidavit for purposes of summary judgment. *See Hoskins v. Haymore*, No. C–96–0428 CAL, 1998 WL 470480, at *2 (N.D. Cal. Aug 5, 1998), *rev'd on other grounds*, 188 F.3d 513 (9th Cir.1999) ("Because plaintiff's original complaint was verified, however, and he amended his

---

[5] The Second Amended Complaint alleges Montalbano made the following sexual comments: "Nice ass"; "Why are you getting so skinny?"; "You look better with more meat on your bones"; and "Will you be my surrogate? My wife won't give me any more kids." (Dkt. 18 ¶ 11).  The Complaint further alleges Montalbano made inappropriate sexual gestures, such as walking down the hallway with a hot dog in his hand and smacking it between his thighs. (*Id.* ¶ 12). Finally, Colo asserts that Montalbano massaged her shoulders and back without her consent, (*id.*); (Dkt. 33 ¶ 6), that he spoke disparagingly about female patients to Colo and other female employees, (Dkt. 18 ¶¶ 11-13), and that he referred to multiple female patients in vulgar and inappropriate terms. (*Id.* ¶ 13).

[6] Colo's first Complaint was verified, (Dkt. 1 at 5), but her Second Amended Complaint is not. (Dkt. 18). It was, however, submitted in response to this Court's Memorandum Decision and Order granting NS Support's Motion to Dismiss. (Dkt. 17).

complaint in response to this court's order, this court will liberally construe the amended complaint to be verified as well."); *Lee v. Ritter*, No. 1:02–CV–282, 2005 WL 3369616, at *3 (E.D. Tenn. Dec. 12, 2005) (Court considered verified complaint and unverified amended complaint to determine whether plaintiff had established existence of genuine issue of material fact at summary judgment). In so doing, the Court finds Colo has identified evidence sufficient to give rise to a genuine dispute of material fact on the first element of her claim for hostile work environment based on sex. Whether a jury finds that the evidence proves the alleged conduct was of a sexual nature is a factual determination that must be made at trial. *See Peck v. City of Tucson*, No. 21-15198, 2021 WL 5984971, at *1 (9th Cir. Dec. 16, 2021) ("A successful hostile work environment claim requires a showing that any alleged harassment that took place was 'because of sex.'" (quoting *Oncale*, 523 U.S. at 80)).

### ii.  Unwelcome Conduct

Next, NS Support argues that Colo has failed to establish that she subjectively viewed Montalbano's alleged conduct as creating a hostile work environment. (Dkt. 30-1 at 7-8). To determine whether Montalbano's conduct was unwelcome, the Court must consider whether Colo, "by her conduct indicated that the alleged sexual advances were unwelcome." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986); *see also Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 873 (9th Cir. 2001).

Here, NS Support has produced evidence that Colo engaged in much of the same conduct of which she complains. Specifically, that Colo would give and receive massages from her co-workers, (Dkt. 30-21 ¶ 8) (Colo "tr[ied] to find people in the clinic who

wanted her to massage their shoulder and … [she] receiv[ed] shoulder massages from others."), and that Colo regularly instigated and overtly participated in office banter of a sexual nature, both verbally and via email, (Dkt. 30-21 ¶ 8) (Colo "participate[d] in office banter and at times she would initiate the banter."); (Dkt. 30-21 ¶ 5) (same). Further, Colo would "laugh at adult humor," "tell inappropriate jokes," "flirt with the men in the clinic" (Dkt. 30-21 ¶ 8), and refer to or address her co-workers, supervisors, and patients with vulgar, inappropriate, and unprofessional language. (Dkt. 30-2 at 8). During oral argument, Colo's counsel disagreed with NS Support's characterization of this evidence; however, Colo has not come forward with any evidence to dispute NS Support's contentions regarding her own conduct.

Colo has alleged, however, that she told Roberts "of her intent to report the misconduct of Montalbano to human resources of NS Support, specifically related to his harassing … behavior toward her and other employees of NS Support." (Dkt. 18 ¶ 15). While NS Support disputes the substance of Colo's conversation with Roberts, (Dkt. 30-21 ¶ 11) ("Colo told me [Roberts] she was gathering 'stuff' on Dr. Montalbano …."), NS Support does not dispute that the conversation occurred, (*id.*). A plaintiff's act of reporting harassing conduct is indicative of whether plaintiff found such conduct to be unwelcome, *see Frotten v. INT Techs. LLC*, No. CV-16-03289-PHX-DGC, 2018 WL 2303032, at *6 (D. Ariz. May 21, 2018) ("The Ninth Circuit has found conduct to be unwelcome if the plaintiff complained about it." (citing *Nichols*, 256 F.3d at 873)), and the determination of whether the conduct was unwelcome "presents factual and credibility questions that are for a jury, and not [the] Court, to resolve," *see Nosik v. All*

*Bright Fam. Dentistry, LLC*, No. 218CV00972RFBVCF, 2022 WL 943604, at *4 (D.

Nev. Mar. 29, 2022) (concluding whether supervising doctor's conduct was "'unwanted'

present[ed] factual and credibility questions that are for a jury, and not this Court, to

resolve" where plaintiff testified that she complained about the alleged conduct to her son

and her assistant).

      Accordingly, the Court finds that Colo has identified evidence sufficient to give

rise to a genuine issue of material fact on the second element of her claim for hostile

work environment based on sex. The Court now turns to the third element, whether

Montalbano's conduct was so severe and pervasive as to alter the conditions of Colo's

employment.

### iii.   Conduct was "Severe or Pervasive"

      "[N]ot all workplace conduct that may be described as 'harassment' affects a

'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor*

*Sav. Bank*, 477 U.S. at 67. For harassment to be actionable, "it must be sufficiently severe

or pervasive 'to alter the conditions of [the victim's] employment and create an abusive

working environment.'" *Id.* (citation omitted).

      "A working environment is abusive if 'hostile conduct pollutes the victim's

workplace, making it more difficult for her to do her job, to take pride in her work, and to

desire to stay on in her position.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir.

2008) (citation omitted). "[W]hether an environment is 'hostile' or 'abusive' can be

determined only by looking at all the circumstances," which "may include the frequency

of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. 17 at 23. Additionally, "[t]he required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols*, 256 F.3d at 872 (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citation omitted).

NS Support asserts that a reasonable person in Colo's position would not consider Montalbano's comments to have caused the workplace to be so objectively offensive as to alter the conditions of their employment. (Dkt. 30-1 at 6). Instead, NS Support argues that Montalbano's comments are "beyond Title VII's purview" because they are "'merely offensive' and 'not severe or pervasive enough to create an objectively hostile or abusive work environment [meaning] an environment that a reasonable person would find hostile or abusive.'" (*Id.*) (citing *Harris*, 510 U.S. at 21). In support of this, NS Support has offered sworn declarations from two of Colo's coworkers who affirm that they "never experienced or witnessed any sexual … discrimination/ harassment at NS Support." (Dkts. 30-20; 30-21) (testimony of Debbie Svangstu and Roberts).

In response, Colo does not offer evidence to dispute the declarations of her co-workers. Instead, she points to the allegations in her Second Amended Complaint to argue that there are genuine issues of material fact in dispute that preclude the Court from granting summary judgment in favor of NS Support. (Dkt. 31 at 3).

The Second Amended Complaint broadly alleges that Colo was "subjected to harassment during the entire course of her employment, but with increasing frequency in the last several months" and that Montalbano "made frequent sexual comments to Colo and to other female employees in the presence of Colo" and "spoke disparagingly about [multiple] female patients." (Dkt. 18 ¶¶ 11, 13). Colo also alleges that she witnessed Montalbano engage in "conduct at the office" of a sexual nature. (Dkt. 18 ¶ 12). While the pervasiveness or frequency of the alleged discriminatory comments and conduct is relevant to show a hostile work environment, Colo's broad-sweeping, conclusory allegations, on their own, are insufficient to satisfy her burden on summary judgment. *Celotex*, 477 U.S. at 324 (The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.).

Even taking the allegations in the complaint about the nature, content, and frequency of Montalbano's comments and conduct as true, Colo has failed to point to evidence showing his comments and conduct created a hostile work environment. Most notably, Colo has not argued or alleged in any of her filings that Montalbano's comments and conduct interfered with her work performance or altered the conditions of her employment, that she perceived the working environment to be abusive or hostile, or that a reasonable person in her circumstances would consider the working environment to be abusive or hostile. *See e.g., Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1162 (9th Cir. 2017) (plaintiff must allege facts sufficient to permit a reasonable fact finder to determine that the conduct "pollute[d] her workplace, ma[de] it more difficult for her to do her job,

to take pride in her work, and desire to stay in her position"); *McGinest*, 360 F.3d at 1113-15 (finding plaintiff alleged facts sufficient to survive summary judgment by alleging his ability to perform job was directly affected by racial harassment by citing specific examples of altered employment conditions); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057 (9th Cir. 2007) (finding allegations specifying alterations in the conditions of employment, such as removal from duties, where sufficient to survive summary judgment).

As such, the Court finds Colo has failed to allege facts or point to evidence upon which a jury could find Montalbano's alleged comments and conduct related to her sex were so severe and pervasive that they altered the terms of her employment. *Meritor Sav. Bank*, 477 U.S. at 67; *see also Kortan v. California Youth Authority*, 217 F. 3d 1104, 1110-11 (9th Cir. 2000) (holding that while supervisor's language, calling female employees "castrating bitches," "Madonnas," or "Regina" in plaintiff's presence, and calling plaintiff "Medea," was offensive, it was not "frequent, severe, or abusive enough to interfere unreasonably with plaintiff's employment"). Accordingly, the Court will grant NS Support's Motion as to Colo's hostile workplace claim based on sex.

### b.  Harassment Based on National Origin

The same analysis that applies to hostile work environment claims based on sexual harassment also applies to claims based on national origin harassment. *Galdamez v. Potter*, 415 F.3d 1015, 1022 n.5 (9th Cir. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002)). Allegations of a hostile workplace must be

assessed from the perspective of a reasonable person belonging to the ethnic group of the plaintiff. *McGinest*, 360 F.3d at 1115.

NS Support argues Colo's claim for workplace harassment based on national origin fails for the same reasons as her claim for harassment based on sex. (Dkt. 30-1 at 11-15).

### i.    Verbal or Physical Conduct Based on National Origin

First, NS Support asserts Colo has failed to provide sufficient detail of the alleged offending conduct by Montalbano. (Dkt. 30-1 at 11-12).

In response, Colo again points to the allegations contained her Second Amended Complaint.[7] (Dkt. 31 at 3); Oral Argument at 2:38. As indicated previously, the Court will "liberally construe" Colo's Second Amended Complaint to be verified and will consider it an affidavit for purposes of summary judgment. In so doing, the Court finds Colo as identified evidence sufficient to give rise to a genuine issue of material fact on this element, *e.g.*, that Montalbano's alleged conduct, if found to be true, is sufficient for

---

[7] Colo alleges that Montalbano made inappropriate comments about her national origin (Mexican) and the national origins of others (Jews and Asians) in front of Colo and other NS Support employees; that he would yell "fucking Mexicans" down the hall of the office; that Montalbano asked his children when they visited his office if they wanted to see "illegal aliens for Halloween," referring to Colo and her family; that Montalbano told Colo that "rice pickers" are supposed to work harder; and referring to Manning, Montalbano would ask Colo and her co-workers "is that fucking Jew working in surgery?" (Dkt. 18 ¶ 10).

a reasonable juror to conclude that Colo was subject to verbal harassment based on national origin.[8]

### ii.    Unwelcome Conduct

Second, NS Support asserts that Colo cannot establish that Montalbano's comments were unwelcome because Colo regularly engaged in similar conduct that was at least as equally offensive as Montalbano's. (Dkt. 30-1 at 13). Specifically, NS Support notes that Colo sent her co-workers racist memes, joked about Mexican and Jewish individuals, and used racist slurs daily. (*Id.* at 14-15).

In response, Colo argues that she reported Montalbano's conduct to Manning sometime before November 28, 2018, though she could not recall exactly when. (Dkt. 30-4 at 7) (Tr. 130:20-23; 131:11-18 (Colo Depo.)). Specifically, Colo testified at her deposition that she complained to Manning that Montalbano "ke[pt] saying 'F-ing Mexicans, F-ing Jews,'" but admitted that she "can't recall everything." (*Id.*) (Tr. 132:3-6 (Colo Depo.)).

---

[8] Colo also alleges that Montalbano made multiple inappropriate and disparaging statements about Colo's supervising physician, Manning. (Dkt. 18 ¶ 10). While Defendant asserts that Colo lacks standing to assert such a claim under Title VII because she has not asserted that she is Jewish, *see Gaub v. Prof. Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1133 (D. Idaho 2012), Colo appears to assert that such comments contributed to the hostile work environment she experienced at NS Support. (Dkt. 18 ¶ 10). As discussed *infra*, however, because Colo alleges only that these comments were "inappropriate," the Court finds that such allegations are insufficient to create a dispute of material fact about whether a reasonable person in Plaintiff's position would find Montalbano's alleged conduct to be so severe and pervasive that it created a hostile work environment.

Whether Colo made any report to Manning and the timing of that report in comparison to her own similar conduct as alleged by NS Support are factual disputes relevant to determining whether the Montalbano's alleged conduct was unwelcome. These disputes and questions of credibility must be resolved by the jury at trial. *See Meritor Sav. Bank*, 477 U.S. at 68 ("[T]he question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact."). Accordingly, the Court finds Colo has established a genuine issue of material fact is in dispute as to whether Montalbano's conduct was unwelcome. That is to say, Colo has pointed to evidence upon which a jury could find that she complained about Montalbano's alleged disparaging comments to her direct supervisor, Manning, and consequently, that Montalbano's conduct was "unwelcome." *See Frotten*, 2018 WL 2303032, at *6 ("The Ninth Circuit has found conduct to be unwelcome if the plaintiff complained about it." (citing *Nichols*, 256 F.3d at 873)). The Court next considers whether Montalbano's alleged conduct was severe or pervasive.

### iii.    Conduct was "Severe or Pervasive"

NS Support asserts that a reasonable person in Colo's position would not consider Montalbano's comments to have caused the workplace to be so objectively offensive as to alter the conditions of their employment. (Dkt. 30-1 at 13). Instead, NS Support argues that Montalbano's comments were "mere utterance[s] of … ethnic or racial epithet[s]

[that] engender[ed] offensive feelings in an employee" but were insufficient to alter the terms and conditions of Colo's employment. (*Id.*) (citing *Faragher*, 524 U.S. at 787).

In response, Colo argues there are genuine issues of material fact in dispute that preclude the Court from granting summary judgment in favor of NS Support. (Dkt. 31 at 3).

Similar to the Court's conclusion with respect to Colo's sexual harassment claim, the Court finds Colo has failed to meet her burden on summary judgment with respect to her national origin discrimination claim: she has not identified evidence upon which a reasonable jury could find Montalbano's alleged statements related to her national origin, or the national origin of others, were so severe and pervasive that they altered the terms of her employment. *Meritor Sav. Bank*, 477 U.S. at 67.

Here, Colo's coworkers' sworn declarations affirm that they "never experienced or witnessed any … national origin discrimination/harassment at NS Support." (Dkts. 30-20; 30-21) (testimony of Debbie Svangstu and Roberts). To rebut this evidence, Colo again relies on the broad allegations in her Second Amended Complaint. (Dkt. 31 at 3); (Dkt. 18 ¶¶ 9, 10) (alleging that Montalbano's "inappropriate" and "disparaging" comments took place "during the entire course of her employment, but with increasing frequency in the last several months" and that Montalbano "continually" and on "multiple occasions," made disparaging remarks about the national origin of Colo and others).

For the same reasons articulated above with respect to Colo's hostile workplace claim based on sex, the Court finds that the broad allegations contained in the Second Amended Complaint are insufficient to satisfy her burden on summary judgment with

respect to Colo's hostile workplace claim based on national origin. Again, even taking Colo's allegations concerning the nature, content, and frequency of Montalbano's comments as true, Colo has failed to point to evidence showing how the disparaging comments created a hostile work environment, interfered with her work performance, or altered the conditions of her employment. Moreover, Colo has neither alleged nor argued in any of her filings with this Court that Montalbano's comments interfered with her work performance or altered the conditions of her employment, that she perceived the working environment to be abusive or hostile, or that a reasonable person in her position would consider the working environment to be abusive or hostile.

For these reasons, the Court finds that a genuine issue of material fact exists as to the third element of Colo's claim because she has failed to allege facts or point to evidence tending to demonstrate that Montalbano's alleged comments were "frequent, severe, or abusive enough to interfere unreasonably with [her] employment." *See Kortan*, 217 F. 3d at 1110-11. Accordingly, the Court will grant NS Support's Motion as to Colo's claim for hostile work environment based on national origin.

## 2. Retaliation

Colo's retaliation claim is subject to the *McDonnell Douglas* burden-shifting analysis used at summary judgment to determine whether there are triable issues of fact for resolution by a jury. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (9th Cir. 1994); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination or other illegal conduct. The burden then shifts to the employer to articulate a legitimate,

nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination or other illegal conduct disappears, but the plaintiff can still prove disparate treatment by offering evidence demonstrating that the employer's explanation is pretextual. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003).

To make out a *prima facie* case of retaliation in violation of Title VII, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). The second element is not at issue here, as it is undisputed that Colo suffered an adverse employment action when she was terminated on December 6, 2018. Thus, the Court must determine whether Colo has set forth a *prima facie* case of retaliation with respect to the first and third elements.

As to the first, an employee's formal or informal complaint regarding unlawful employment practices is a "protected activity," and a plaintiff need only show that her belief that an unlawful employment practice occurred was "reasonable." *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994).

Once it has been shown that plaintiff engaged in a protected activity, the third element requires that the plaintiff "present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action. Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)

(citations omitted). A plaintiff may establish a causal link between the protected activity and the adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and a proximity in time between the protected action and the adverse employment act. *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *see also Passantino*, 212 F.3d at 507 ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

Two separate activities form the basis for Colo's retaliation claim: (1) informing her co-worker, Roberts, that she was planning to report Montalbano's conduct to human resources, and (2) reporting Montalbano's conduct to her direct supervisor, Manning. The Court will discuss each in turn.

### a. Conversation with Roberts

The Second Amended Complaint alleges that "[o]n or about November 27, 2018, Colo spoke with other employees of NS Support and spoke of her intent to report the misconduct of Montalbano to human resources of NS Support, specifically related to his harassing and racist[] behavior towards her and other employees of NS Support." (Dkt. 18 ¶ 15). Colo's declaration states: "on November 27, 2018 I spoke to Kelly Roberts regarding concerns I had about the conduct of Dr. Montalbano. I explained to Kelly what my concerns were and that I was going to report him to human resources." (Dkt. 33 ¶ 4); *see also* (Dkt. 32 ¶ 3).

In contrast, Roberts's Declaration states:

> Ms. Colo told me she was gathering "stuff" on Dr. Montalbano. I asked for details, but she would not elaborate. She did not tell me what information she had, what type of information she was gathering, or what she was doing. Ms. Colo did not say she was going to file any kind of complaint, nor did she indicate any expectation that I should take any action on her behalf to report anything. Ms. Colo's comment concerned me and was upsetting to me, so I advised Ms. Jolliff what Ms. Colo had told me about gathering information on Dr. Montalbano. Ms. Colo has never revealed to me what information she was allegedly gathering against Dr. Montalbano.

(Dkt. 30-21 ¶ 11).

NS Support contends Colo's vague indication to Roberts that she was "gathering 'stuff'" on Montalbano is insufficient to constitute protected activity because Roberts was a friend and co-worker, not a supervisor or company officer, and Colo did not tell Roberts what information she had or what she was going to do with that information. (Dkt. 30-1 at 17-18).

Colo maintains "her attempts to report conduct she believed to be unlawful are protected activity." (Dkt. 31 at 4). Additionally, during oral argument, Colo's counsel argued that Colo "was planning to participate in protected activity [when she spoke with Roberts]. She communicated that to a coworker, and then before she had the opportunity to do so, she was terminated." Oral Argument at 2:38-2:40.

To create a dispute of material fact sufficient to survive summary judgment on the issue of whether she engaged in a protected activity, Colo must point to evidence demonstrating that she opposed actions or a practice by her employer that are made unlawful under Title VII and the IHRA. *E.E.O.C. v. Crown Zellerbach*, 720 F.2d 1008, 1013 (9th Cir. 1983). Based upon the record before it, the Court finds Colo has alleged

facts which, if true, are sufficient to establish a genuine issue of material fact concerning whether Colo engaged in a protected activity.

Colo contends in her complaint and declaration that she spoke with other employees of NS Support, specifically Roberts, about her concerns with Montalbano's harassing and discriminatory conduct and her intent to report Montalbano's misconduct to NS Support's human resources. (Dkt. 18 ¶ 16); (Dkt. 33 ¶ 4). NS Support does not dispute that Colo spoke to Roberts about Montalbano, but asserts that Colo told Roberts she was "gathering 'stuff'" on Montalbano. (Dkt. 30-21 ¶ 11). The parties dispute whether Colo told Roberts she intended to report Montalbano. Accordingly, the content of Colo's conversation with Roberts is a factual question for the jury to resolve at trial.

For purposes of this motion, the Court finds Colo has provided sufficient evidence upon which a reasonable jury could conclude that Colo reasonably believed she was engaged in a protected activity; *e.g.*, gathering information about alleged workplace misconduct by Montalbano with the intention of reporting the same. *See* 42 U.S.C. § 2000e-3(a) (Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

Additionally, there is evidence upon which a jury could find Colo possessed a reasonable belief that the conduct she was preparing to report was unlawful and, therefore, constituted a protected activity. *See Gaub v. Prof. Hosp. Supply, Inc.*, 845 F.

Supp. 2d 1118, 1134 (D. Idaho 2012) ("[A]n employee's formal or informal complaint regarding unlawful employment practices is a 'protected activity,' and a plaintiff need only show that her belief that an unlawful employment practice occurred was 'reasonable.'"); *McGinest*, 360 F.3d at 1115 n.5 ("[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quoting *Anderson*, 477 U.S. at 255)).

Having found that Colo has identified evidence upon which a jury could find she was engaged in a protected activity, the Court next considers the third element of Colo's retaliation claim, causation.

To establish causation, Colo must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [her] firing and that but for such activity [she] would not have been fired." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002). "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (citing *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986)); *see also Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). "In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

NS Support argues the fact that Colo's termination occurred soon after management at NS Support learned Colo was "gathering 'stuff'" on Montalbano does not, on its own, prove that her termination was retaliatory because (1) no one at NS Systems knew what "stuff" Colo was gathering, and (2) the totality of the circumstances indicate that NS Support had other sufficient, nondiscriminatory reasons to terminate Colo's employment. (Dkt. 30 at 18). Colo, on the other hand, asserts that the decision to terminate her employment soon after NS Support learned of her intent to file a complaint against Montalbano is sufficient to create a genuine dispute of material fact. (Dkt. 31 at 4-5).

The Court finds Colo has presented sufficient circumstantial evidence to give rise to a genuine issue of material fact as to the element of causation. *See Cohen*, 686 F.2d at 796 ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Yartzoff*, 809 F.2d at 1376. Specifically, Colo points to Hajjar's December 6, 2018, email to Manning explaining NS Support's decision to terminate Colo as evidence of NS Support's knowledge that Colo had engaged in protected activity. There, Hajjar indicated that he had spoken with Jolliff about Colo's conversation with Roberts, specifically that Colo was "compiling information against one of the partners [Montalbano] to use against them." (Dkt. 34-1, Ex. A at 7). Colo also cites Hajjar's deposition testimony as evidence of NS Support's knowledge of her protected activity, asserting that Hajjar terminated her employment based on his belief that Colo created a "threat of a future action hostile to a partner" and that his "first responsibility in

any role as director is to protect the organization, therefore, protect its partners." (Dkt. 34-1 at 2) (Tr. 49:11-2; 47:5-7 (Hajjar Depo.)).

This evidence is sufficient to permit a reasonable juror to infer that Hajjar was aware Colo was engaged in protected activity before NS Support terminated her on December 6, 2018. Not only did Hajjar testify that he was aware that Colo was "gathering information" on Montalbano, but he admitted that he believed Colo created a "threat of a future action hostile to a partner," and that he considered it his responsibility to protect his partners.

Further, the very close temporal proximity between Colo's November 27, 2018 conversation with Roberts, the relay of that conversation to Jolliff and Hajjar on November 30, 2018 and December 4, 2018, and the resulting emergency meeting where there was a unanimous vote to immediately terminate Colo's employment on December 6, 2018, all of which are undisputed, is evidence upon which a reasonable jury could find Colo's employment was terminated because she was engaged in a protected activity. *Yartzoff*, 809 F.2d at 1376 (holding causation may be inferred from proximity in time between acts).

Having concluded that there is evidence sufficient to establish a *prima facie* case of retaliation, the burden shifts to NS Support establish a legitimate, nondiscriminatory reason for its decision to terminate Colo's employment. *Raytheon*, 540 U.S. at 49 n.3.

NS Support maintains the decision to terminate Colo's employment was based on a history of behavioral problems and negative attitudes, (Dkt. 30-2 ¶¶ 21, 32), her

insubordination to a supervisor, and pursuant to the bylaws in the employee handbook (Dkt. 34-1, Ex. A at 7).

Colo disputes NS Support's proffered bases for terminating her employment, arguing that each of the incidents allegedly supporting NS Support's decision to terminate Colo occurred far earlier in her employment than the incident that brought about her termination, and that each of those matters had been addressed and resolved prior to her termination. (Dkt. 31 at 5). Colo instead contends that NS Support's proffered reasons are pretextual. (*Id.*)

The Court finds genuine issues of material fact exist as to whether NS Support's proffered reasons for termination were legitimate or pretextual. Accordingly, the Court will deny NS Support's Motion as to Colo's retaliation claim based on her conversation with Roberts.

### b.  Conversation with Manning

During her deposition, Colo testified that she spoke to Manning about Montalbano's "racist remarks," but could not recall the exact date she voiced her complaint to Manning. (Dkt. 30-4 at 7) (stating "I can't recall" in response to multiple questions about the date she spoke with Manning about Montalbano's conduct (Tr. 131:4-132:6 (Colo Depo.))). During the hearing, Colo's counsel confirmed that Colo spoke with Manning sometime before her conversation with Roberts on November 27, 2018, and sometime before the November 28, 2018, meeting with Hajjar, Manning, and Jolliff. Oral Argument at 2:30.

The Court finds Colo's allegations that she reported her concerns about Montalbano to Manning are sufficient to give rise to a genuine issue of material fact on the first element of the retaliation claim. That is to say, if the jury finds Colo's deposition testimony to be true, Colo's report to Manning could be found to constitute a protected activity. *See Ray*, 217 F.3d at 1240 n.3 (making an informal complaint to a supervisor constitutes protected activity); *McGinest*, 360 F.3d at 1115 n.5 ("[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" (quoting *Anderson*, 477 U.S. at 255)).

However, Colo has failed to point to any evidence upon which a reasonable juror could find a causal connection between Colo's conversation with Manning and her termination. Not only has Colo failed to point to evidence demonstrating a "reasonable inference as to timing" between her conversation to Manning and her termination, *see Manzo v. Laborers Int'l Union of N. Am.*, 348 F. App'x 267, 269 (9th Cir. 2009) (finding no causal connection between plaintiff's alleged protected activity and retaliatory employment decision where plaintiff "ma[de] no demonstration of reasonable inferences as to timing"), but the evidence is undisputed that Manning did not take part in NS Support's decision to terminate Colo. Indeed, the record is devoid of evidence suggesting that Manning shared Colo's concerns about Montalbano with Jolliff or Hajjar at any point prior to Colo's termination.

On December 6, 2018, Hajjar sent Manning an email informing him of the circumstances surrounding NS Support's decision to terminate Colo. Hajjar's email states as follows:

On Friday, November 30, it was brought to the attention of Lisa that Bri was compiling information against one of the partners to use against them by another NSA employee. We specifically told Bri at the Thursday meeting that if she has any concerns about the workplace, please bring them to you or me. No concern was ever mentioned about any interaction.

Lisa brought this to your attention late last week. You did not bring this to me or address the issue about any complaints, specificity, or what happened. I was informed about this on Tuesday December fourth by Lisa and called an emergency meeting that did not include you because there was a unanimous lack of faith vote about your handling of this issue.

Based on our bylaws as stated in the handbook, including failure to follow clinic policy and acting insubordinate to a supervisor, there was a unanimous vote to immediately terminate Brianna.

(Dkt. 34-1, Ex. A at 7).

As Hajjar's email indicates, not only was Manning excluded from the decision-making process, but even after Jolliff informed Manning that Colo was "compiling information," Manning still did not present any information to the decisionmakers about Colo's alleged reports of Montalbano's racist remarks.

Thus, Colo has presented no evidence to demonstrate that her report to Manning, whenever it took place, had any bearing on NS Support's decision to terminate her. *See Manzo*, 348 F. App'x at 269 ("[E]ven if the comments had been protected activity, Manzo has not pointed to any evidence that would constitute a 'showing sufficient for a reasonable trier of fact to infer that [Vaughn or Tommy White] w[ere] aware that [Manzo] had engaged in protected activity' before firing Manzo, as necessary to demonstrate causation" (quoting *Raad*, 323 F.3d at 1197)).

For these reasons, the Court finds Colo has failed to produce evidence demonstrating her conversation with Manning had any causal connection to the

termination of her employment. Accordingly, the Court will grant NS Support's motion as to Colo's retaliation claim based on her conversation with Manning.

## ORDER

THEREFORE, IT IS HEREBY ORDERED:

1. Defendant's Motion for Summary Judgment (Dkt. 30) is GRANTED in part and DENIED in part, as follows:

   a. **The Motion is GRANTED** as to Plaintiff's hostile work environment claim.

   b. **The Motion is DENIED** as to Plaintiff's retaliation claim.

2. The parties are directed to meet and confer regarding how they intend to proceed in this matter, and to file a joint status report within fourteen (14) days after the date of this Order advising the Court of the same.

**IT IS SO ORDERED.**

DATED: July 7, 2022

Honorable Debora K. Grasham
United States Magistrate Judge