UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIANNA COLO,<br><br>                    Plaintiff,<br><br>        v.<br><br>NS SUPPORT, LLC, an Idaho limited<br>liability company d/b/a Neuroscience<br>Associates,<br><br>                    Defendant. | Case No. 1:20-CV-00437-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff's Motion *in Limine*, (Dkt. 45), and Defendant's

Motions *in Limine*, (Dkt. 44). Plaintiff's Motion is fully briefed, (Dkt. 46); however, no

response has been filed to Defendant's Motions. On August 26, 2022, the parties

presented oral argument on the pending motions. This written Order formalizes the

Court's ruling on the various topics raised in the motions and as stated on the record

during the hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Brianna Colo ("Colo") filed a complaint on September 14, 2020, against

her former employer, NS Support, LLC ("NS Support"), raising a single claim of

**MEMORANDUM DECISION AND ORDER – 1**

discrimination, harassment, and retaliation based on sex and national origin, in violation

of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act.[1] (Dkt. 18).

Following this Court's Memorandum Decision and Order Re: Motion for Summary

Judgment (Dkt. 40), which granted Defendant's Motion for Summary Judgment (Dkt. 30)

as to Plaintiff's hostile workplace claim, the sole claim proceeding to trial is Plaintiff's

retaliation claim based upon a conversation she had with her former co-worker, Kelly

Roberts ("Roberts") regarding her concerns about Dr. Montalbano's alleged conduct.[2] A

jury trial is scheduled to commence on September 26, 2022.

## DISCUSSION

### 1. Standard of Law

"A motion *in limine* is a procedural mechanism to limit in advance testimony or

evidence in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4

(9th Cir. 2013) (quoting *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009)).

There is no express authority for motions *in limine* in either the Federal Rules of Civil

Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well

recognized in practice and by caselaw. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753,

758 (2000). The key function of a motion *in limine* is to "exclude prejudicial evidence

before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

---

[1] The facts, which are well known to both the parties and the Court and have been set forth in this Court's recent Memorandum Decision and Order Re: Motion for Summary Judgment (Dkt. 40 at 2-6), will not be recited here in full.

[2] The Court dismissed Plaintiff's retaliation claim based on her conversation with Dr. Manning. (Dkt. 40 at 30-33).

**MEMORANDUM DECISION AND ORDER – 2**

Generally, motions *in limine* excluding broad categories of evidence are disfavored—as such issues are more fairly dealt with during trial as the admissibility of evidence arises. *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Additionally, it is sometimes necessary to defer ruling until trial when a better estimate of the impact of the evidence on the jury can be made by the trial judge. *Crawford v. City of Bakersfield*, No. 1:14-cv-01735-SAB, 2016 WL 5870209, at *2 (E.D. Cal. Oct. 6, 2016).

Denial of a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. Instead, denial of such a motion simply means the Court is unable to determine whether the evidence should be excluded outside of the trial context. At trial, the parties may object to the offering of evidence even though such evidence was the subject of the Court's denial of a motion *in limine*. Where a motion *in limine* is granted, however, the parties are precluded from arguing, discussing, or offering the particular evidence that the Court has ordered be excluded unless the Court rules otherwise during the course of the trial.

### 2.  Plaintiff's Motion *in Limine*

Plaintiff seeks to exclude five categories of information or evidence at trial. (Dkt. 45-1 at 3-4).

#### a.  Text Messages and Emails

First, Plaintiff seeks an order from this Court preventing Defendant from introducing text messages and emails between Plaintiff and her former coworkers to

**MEMORANDUM DECISION AND ORDER – 3**

establish that Plaintiff did not find the actions of Dr. Montalbano objectionable. (Dkt. 45-1 at 3).

Defendant opposes Plaintiff's motion, asserting that the text messages and emails are relevant insofar as they have a tendency to make the fact of Plaintiff's intent to make a report of the events she reasonably believed to be workplace discrimination more or less probable. (Dkt. 46 at 3). Specifically, Defendant asserts that such evidence is relevant to (1) demonstrate whether Plaintiff "'reasonably' believed she was intending to report events of what she believed were work place discrimination"; (2) demonstrate that Plaintiff "was not the model employee [she] would like others to believe"; (3) support Defendant's position that Plaintiff "believed she could do and say whatever she wanted because she thought she was untouchable"; (4) support Defendant's position that Plaintiff "was a toxic employee"; (5) demonstrate "Plaintiff's attitude and disrespect towards others"; and (6) aid the jury in determining issues involving Plaintiff's credibility, such as whether Plaintiff "reasonably believed what she was going to report was work place discrimination." (*Id.*).

At the hearing, Plaintiff's counsel asserted that Defendant did not have knowledge of the content of Plaintiff's text messages and emails at the time it made the decision to terminate her and that Defendant only became aware of such evidence during the discovery process. Thus, Plaintiff asserts that this evidence had no bearing on Defendant's decision to terminate Plaintiff and is therefore irrelevant to both Plaintiff's remaining retaliation claim as well as Defendant's affirmative defense to that claim.

**MEMORANDUM DECISION AND ORDER – 4**

The Court will **GRANT IN PART** Plaintiff's motion to the extent Defendant seeks to introduce evidence of Plaintiff's emails and text messages to undermine Plaintiff's credibility and demonstrate that she did not "reasonably believe" that what she was intending to report was workplace discrimination, as such evidence will not assist the trier of fact in evaluating Plaintiff's retaliation claim at trial.

The Ninth Circuit has held that the reasonableness of a plaintiff's belief that an unlawful employment practice occurred is measured by an *objective* standard. *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994). It is a standard that must make "due allowance … for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Id.*

At summary judgment, Plaintiff's text messages and emails were relevant to her sexual and national origin harassment claims, as one of the pertinent inquiries was whether Plaintiff found her work environment to be "both 'objectively and subjectively offensive.'"[3] (Dkt. 40 at 10) ("A hostile work environment is one that is both 'objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998))); (*id.* at 12-14, 19-20) (considering Plaintiff's email and text messages in evaluating whether Dr. Montalbano's alleged conduct was "unwelcome").

---

[3] As noted elsewhere in this decision, Plaintiff's hostile work environment claim has since been dismissed. (Dkt. 40 at 17, 22).

**MEMORANDUM DECISION AND ORDER – 5**

Here, however, Plaintiff's remaining retaliation claim is evaluated based upon an objective standard. *See* Moyo, 40 F.3d at 985. Specifically, the relevant inquiry is whether, at the time Plaintiff allegedly reported Dr. Montalbano's harassing and discriminatory conduct to Roberts, Plaintiff had a reasonable belief that the conduct she was reporting violated Title VII. *See, e.g.*, *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) ("[A] plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII. To establish the first element of a prima facie case, [the plaintiff] must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII."); *id.* at *Sias v. City Demonstration Agency*, 588 F.2d 692, 685 (9th Cir. 1978) ("When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts."); *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) ("[T]he employee need only reasonably believe that the employer has engaged in an unlawful employment practice."); *see also McZeal v. City of Seattle*, No. C05-1965P, 2006 WL 3254504, at *7 (W.D. Wash. Nov. 9, 2006) ("Plaintiff only must show that he had a reasonable belief that it was unlawful under Title VII for Ms. Marangon to make racially offensive remarks in the workplace; he does not need to demonstrate that Ms. Marangon's comments actually violated Title VII.").

Based upon this objective standard, the Court finds that evidence of Plaintiff's text messages and emails is irrelevant to demonstrate whether Plaintiff "reasonably believed" the conduct she was reporting violated Title VII.

**MEMORANDUM DECISION AND ORDER – 6**

The Court will also **GRANT IN PART** Plaintiff's motion to the extent Defendant seeks to introduce certain text messages and emails discovered *after* Plaintiff's termination, as such evidence has no bearing on Defendant's affirmative defense, *i.e.*, that Defendant had a legitimate basis for terminating Plaintiff's employment. This is particularly true where, as confirmed by counsel at the hearing, the decisionmakers at NS Support were not aware of many of the text messages and emails they now seek to introduce until they were produced in discovery.

To the extent that Defendant was aware of certain text messages or emails prior to Plaintiff's termination, however, and to the extent such evidence did impact Defendant's decision to terminate Plaintiff, the Court will **DENY IN PART** Plaintiff's motion and will rule on the admissibility of such evidence at trial, depending on how it is presented and whether the necessary foundation has been laid.

### b.  Previous Handbook Violations – Paid Time Off Balance and Dress Code Violations

Plaintiff's second and third motions seek orders from this Court excluding evidence of Plaintiff's previous handbook violations, specifically pertaining to her paid time off (PTO) balance and her violation of the dress code policy, as Plaintiff asserts such violations occurred several months prior to her termination and were either "cleared up" or resolved after the policy was no longer in place. (Dkt. 45-1 at 3-4).

Defendant opposes Plaintiff's motions, asserting that Plaintiff's PTO balance and dress code violations are relevant to prove that NS Support had legitimate grounds for

terminating Plaintiff's employment due to her continued refusal and unwillingness to abide by the policies contained in NS Support's employee handbook. (Dkt. 46 at 4-7).

The Court will **DENY** Plaintiff's motion on this issue, as such evidence is relevant to Defendant's affirmative defense to Plaintiff's retaliation claim, *i.e.*, whether NS Support had a legitimate basis for terminating Plaintiff's employment. It is for the finder of fact to determine whether, as Defendant suggests, Plaintiff's previous handbook violations contributed to her eventual termination, or whether, as Plaintiff suggests, these violations were too far removed from the events immediately preceding the adverse employment action to have any real impact on Defendant's decision to terminate Plaintiff. The Court also anticipates that such evidence may be relevant to determine what amount of front pay, if any, to which Plaintiff is entitled. *See Gotthardt*, 191 F.3d at 1156-57 ("A plaintiff's past work history may be relevant to calculating a front pay award when it suggests that the plaintiff might not have been employed steadily in the future."). Accordingly, Plaintiff's motion is **DENIED**.

### c.  Bad Character Evidence

Plaintiff's fourth motion contains a request for a general *in limine* order excluding bad character evidence—a request covered by the Rules of Evidence. (Dkt. 45-1 at 4). At the hearing, Plaintiff's counsel indicated that she was specifically seeking to exclude the affidavits of other NS Support employees who testified that she engaged in overtly sexualized behavior at the office, as such evidence is irrelevant to her remaining retaliation claim. Defendant maintains, however, that Plaintiff's conduct is relevant to Defendant's ultimate decision to terminate Plaintiff. In light of Defendant's proffer, the

**MEMORANDUM DECISION AND ORDER – 8**

Court will **DENY** Plaintiff's motion at this time and will rule on the admissibility of such evidence as it is presented at trial based on the governing rules and applicable law.

### d. Evidence of Which Defendant Did Not Have Knowledge at the Time of Termination

Plaintiff's fifth motion also contains a broad request for an order *in limine* excluding "[a]ny evidence which was discovered by Defendant through the discovery process of this matter and the prior EEOC/IHRC matter," asserting that such evidence is irrelevant because it would have had no bearing on Defendant's decision to terminate Plaintiff. (Dkt. 45-1 at 4). At the hearing, Plaintiff's counsel clarified that she specifically sought to exclude text messages and emails discovered after Plaintiff's termination for the same reasons discussed in her first motion *in limine*. For the same reasons the Court granted Plaintiff's first motion, the Court will **GRANT** Plaintiff's fifth motion.

### 3. Defendant's Motions *in Limine*

Defendant seeks to exclude nine categories of information or evidence at trial. (Dkt. 44-1 at 4-16).

### a. Plaintiff's Hostile Workplace/Sexual Harassment/Discrimination Claims

First, Defendant seeks an order from the Court preventing Plaintiff from offering evidence and testimony at trial relating to her discrimination/sexual harassment/hostile work environment, and retaliation claims that were previously dismissed by this Court, as such evidence is irrelevant. (Dkt. 44-1 at 4-5). Specifically, Defendant asks that Plaintiff be prohibited from offering direct evidence or implying, inferring, or suggesting that (1) she told anyone her job was difficult/challenging/miserable/unbearable; (2) being at work

**MEMORANDUM DECISION AND ORDER – 9**

was difficult/challenging/miserable/unbearable; (3) she believed she was being discriminated against because of her race, ethnicity, or religion; or (4) she was being sexually harassed by Dr. Montalbano's conduct. (*Id.* at 5).

At the hearing, Plaintiff's counsel confirmed that she would not be seeking to introduce evidence of claims previously dismissed by this Court but maintained that she should not be prohibited from introducing evidence essential to her remaining retaliation claim.

The Court will **GRANT IN PART** Defendant's first motion, as both parties concede that Plaintiff's previously dismissed claims are irrelevant to Plaintiff's remaining claim for retaliation. However, the Court will not prohibit Plaintiff from offering evidence, direct or otherwise, as to her own perceptions about Dr. Montalbano's conduct and whether she believed such conduct was prohibited under Title VII when she allegedly reported it to Roberts. As discussed at length above, such evidence is relevant to the first element of Plaintiff's retaliation claim, whether Plaintiff engaged in protected activity. To that end, Defendant's motion is **DENIED IN PART**.

### b.  Plaintiff's Communications with Dr. Manning

Second, Defendant seeks an order from the Court prohibiting Plaintiff from offering any evidence or testimony relating to communications she may have had with Dr. Manning about Dr. Montalbano's alleged inappropriate conduct, as Defendant asserts that such statements are irrelevant to Plaintiff's remaining retaliation claim. (Dkt. 44-1 at 5-6). At the hearing, Plaintiff confirmed that she did not intend to introduce such evidence as part of her case-in-chief, as it is irrelevant to her remaining claim for

**MEMORANDUM DECISION AND ORDER – 10**

retaliation, given that Dr. Manning was not aware of Plaintiff's termination until after it occurred.

The Court will **GRANT IN PART** Defendant's motion to the extent Plaintiff seeks to introduce such evidence as part of her case-in-chief, as it is irrelevant to Plaintiff's remaining retaliation claim and has been previously dismissed by this Court. (Dkt. 40 at 30-33). However, the Court may allow such evidence to the extent it is offered in response to a question posed by defense counsel on cross-examination or for purposes of impeachment. To that end, the Court will **DENY IN PART** Defendant's motion and will rule on the admissibility of such evidence if it is offered at trial.

### c.  Plaintiff's Communications with Former NS Support Co-Workers

Third, Defendant seeks an order from the Court prohibiting Plaintiff from offering evidence of prior communications between herself and her former NS Support co-workers regarding Dr. Montalbano's alleged inappropriate statements and conduct, as Defendant asserts such statements constitute inadmissible hearsay. (Dkt. 44-1 at 6).

Generally, objections to hearsay are best assessed when the statements are presented in context at trial. *See Campbell v. Union Pac. R. R. Co.*, No. 4:18-CV-00522-BLW, 2021 WL 1341037, at *2 (D. Idaho Apr. 9, 2021). Therefore, the Court will **DENY** Defendant's motion and will rule on the admissibility of testimony and evidence on this matter at trial when the context of the proffered evidence is clear and the Court can determine whether some exception to the hearsay rule applies.

**MEMORANDUM DECISION AND ORDER – 11**

### d.  Dr. Montalbano's Hospital Privileges

Fourth, Defendant seeks an order from the Court prohibiting Plaintiff from offering any evidence relating to Dr. Montalbano's hospital privileges at trial because Defendant asserts such evidence is irrelevant, hearsay, and privileged. (Dkt. 44-1 at 7-8). At the hearing, Plaintiff agreed that she would not be seeking to introduce evidence of Dr. Montalbano's hospital privileges at trial. Accordingly, the Court will **GRANT** Defendant's fourth motion.

### e.  Damages

Next, Defendant seeks orders *in limine* concerning evidence related to Plaintiff's request for damages pertaining to (i) front and back pay; (ii) the $50,000.00 statutory damages cap under 42 U.S.C. § 1981a(b)(3); (iii) Plaintiff's guaranteed bonus; and (iv) front pay through retirement.

### i.  Front and Back Pay

Defendant seeks an order precluding Plaintiff from offering evidence at trial to support a claim for compensatory damages, as Plaintiff has identified in her discovery responses that she is seeking only front and back pay, and she has not disclosed any experts or produced any documentary evidence that would support a non-economic general damages claim for emotional pain, suffering, inconvenience, or other nonpecuniary losses. (Dkt. 44-1 at 10-11). At the hearing, Plaintiff confirmed that she is only seeking front and back pay and is not seeking non-economic general damages in any

of the categories asserted by Defendant.[4] Accordingly, the Court will **GRANT**

Defendant's motion on this issue.

### ii.  Statutory Damages Cap at $50,000.00

Defendant asserts that if the Court is inclined to permit Plaintiff to offer evidence

supporting a claim for damages in addition to front and back pay, any such award should

be capped in accordance with applicable statutes at $50,000.00. (Dkt. 44-1 at 12).

As above, Plaintiff's recovery is limited to front pay and back pay in accordance

her discovery responses. Because the statutory damages cap does not apply to front and

back pay,[5] *see Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001); *see*

*also Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir.2000), Defendant's

motion is **DENIED**.

---

[4] Plaintiff's counsel further clarified at the hearing that Plaintiff is also seeking to recover punitive damages, as indicated in her discovery response, (*id.* at 11; Ex. B at 2) ("Plaintiff will additionally seek punitive damages to be determined by the jury in this matter."), and as stated in her Amended Complaint (Dkt. 18 ¶ 26) ("Colo hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604."). In light of Plaintiff's representations at the hearing, defense counsel asked the Court to exclude evidence of Plaintiff's punitive damages claim from trial. Given that Plaintiff's Amended Complaint does contain a claim for punitive damages, and given that Defendant has not presented a fully developed argument in support of its oral motion to exclude Plaintiff's claim for punitive damages, the Court will **DENY** Defendant's motion and allow Plaintiff to introduce evidence to support her claim for punitive damages. At the close of the evidence, the Court will determine as a matter of law whether the record contains enough evidence to support or justify an award of punitive damages; if so, the question of whether such damages will be awarded and what amount will be submitted to the jury.

[5] Plaintiff's claim for punitive damages is subject to the statutory cap under 42 U.S.C. § 1981a(b)(3). However, the jury is prohibited from being advised of any limitations or caps on damages at trial. 42 U.S.C. § 1981a(c)(2). Accordingly, based upon the outcome at trial, the Court intends to apply the statutory cap to any punitive damages award in accordance with the law.

**MEMORANDUM DECISION AND ORDER – 13**

### iii.  Plaintiff's Guaranteed Bonus

Defendant seeks an order from the Court prohibiting Plaintiff from introducing evidence at trial, including testimony from her retained experts, that she was entitled to some type of guaranteed bonus each year while employed by Defendant, as such evidence would be speculative and unsupported by evidence in the record. (Dkt 44-1 at 12-13).

The Court will **DENY** the motion at this time and will rule on the admissibility of this evidence as it is presented at trial based on the governing rules and applicable law. Plaintiff will not be prohibited from presenting evidence pertaining to the bonuses she received while employed by Defendant. In turn, Defendant will be permitted to cross-examine Plaintiff and any of her retained experts concerning how any projected future bonuses should be calculated. *See Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1156 (9th Cir. 1999) (trier of fact may consider plaintiff's career path, age, and reasonable mitigation in determining award of front pay). Ultimately, this is an issue for the trier of fact.

### iv.  Front Pay through Retirement

Defendant requests that the Court enter an order prohibiting Plaintiff from offering evidence relating to her claim for front pay through retirement, as such evidence is speculative and "presumes [Plaintiff] would have remained in [Defendant's] employ until retirement when the evidence suggests otherwise." (Dkt. 44-1 at 13-14). Plaintiff has not presented a response.

The Court will **DENY** Defendant's motion on the issue of front pay through retirement and permit Plaintiff to present testimony and evidence to that end. As a general matter, a plaintiff is entitled to present evidence of future wage loss when reinstatement is not feasible. *See Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1156 (9th Cir. 1999). Additionally, while front pay calculations should necessarily take into account Plaintiff's projected career path, "front pay awards … must be reduced by the amount plaintiff could earn using reasonable mitigation efforts." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1346–48 (9th Cir. 1987). Thus, nothing precludes Plaintiff from offering evidence of her projected career path at NS Support, including promotions and advancements based on her work history, absent the alleged retaliation. It is ultimately up to the finder of fact to determine whether Plaintiff's assumptions about the future of her employment are reasonable.

### f.  Expert Opinions

Finally, Defendant requests that the Court limit Plaintiff's expert witnesses' testimony to the facts and opinions contained in their reports. (Dkt. 44-1 at 15). At the hearing, Plaintiff confirmed that she has not disclosed any supplemental expert reports, that she does not intend to disclose any supplemental expert reports prior to trial, and that she would not be presenting any supplemental expert reports at trial. Accordingly, Defendant's motion is **GRANTED**. The Court will limit expert witness testimony to the opinions contained in their reports in accordance with the rules of evidence.

**MEMORANDUM DECISION AND ORDER – 15**

## CONCLUSION

This Order is intended to assist the parties in their preparation for trial by, to the extent possible, giving the parties guidance in structuring their presentation of evidence. The parties must abide by the Court's rulings but may ask for reconsideration as trial progresses. The final ruling on the admissibility of any particular testimony or piece of evidence will be made at trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) ("The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling."). Prior to trial, the parties are encouraged to discuss the evidentiary issues they anticipate arising at trial concerning particular testimony or evidence in their trial briefs.

During the trial, the parties are directed to advise the Court in advance of evidentiary issues they anticipate arising so that the Court can address the same outside the presence of the jury, if necessary. The parties shall do so by notifying the law clerk regarding such issues well in advance of the evidence being offered.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motions *in Limine* (Dkt. 45) are **GRANTED** or **DENIED**, as follows:

   a. Text Messages and Emails—**GRANTED IN PART** and **DENIED IN PART**.

   b. Previous Handbook Violations: Paid Time Off Balance and Dress Code Violations—**DENIED**.

**MEMORANDUM DECISION AND ORDER – 16**

     c.   Inadmissible Character Evidence—**DENIED**.

     d.   New Evidence Discovered After Plaintiff's Termination—**GRANTED**.

2.   Defendant's Motions *in Limine* (Dkt. 44) are **GRANTED** or **DENIED,** as follows:

     a.   Plaintiff's Hostile Workplace/Sexual Harassment/Discrimination Claims—**GRANTED IN PART, DENIED IN PART**.

     b.   Plaintiff's Communications with Dr. Manning—**GRANTED IN PART, DENIED IN PART**.

     c.   Plaintiff's Communications with Former NS Support Co-Workers—**DENIED**.

     d.   Dr. Montalbano's Hospital Privileges—**GRANTED**.

     e.   Damages related to:

         i.   Front and Back Pay—**GRANTED**.

         ii.   $50,000.00 Statutory Cap—**DENIED**.

         iii.   Guaranteed Bonus—**DENIED**.

         iv.   Front Pay through Retirement—**DENIED**.

     f.   Expert Opinions—**DENIED**.

DATED: September 1, 2022

Honorable Debora K. Grasham
United States Magistrate Judge